No. 20,808.

JOHN HENRY ALBACH et al., *Appellees*, v. THE FRATERNAL AID UNION, *Appellant.*

SYLLABUS BY THE COURT.

1. FRATERNAL BENEFICIARY CORPORATIONS—*Merger—Statutory Authority.* Chapter 210 of the Session Laws of 1913 (Gen. Stat. 1915, §§ 5418-5420) authorizes the consolidation or merger of fraternal beneficiary corporations under the supervision of the superintendent of insurance and with his approval.

2. QUO WARRANTO—*Legality of Merger of Two Corporations—Proper Parties to Bring Action.* A fraternal insurance corporation of Kansas and a fraternal insurance corporation of Colorado effected a merger pursuant to the statutes of Kansas and Colorado under the supervision of the insurance departments of both states and with their approval.

Certain members and insurance certificate holders of the Kansas corporation filed an action charging irregularities, fraud, etc., in bringing about the merger, praying for the appointment of a receiver and for a segregation of the assets and affairs of the merged corporations, and to restore the independence of the Kansas corporation. *Held,* that where there is no powerful and peculiar equity involved, an action of such gravity can only be commenced in the name of the state on the relation of its responsible legal representative, and that the plaintiffs as private individuals can not maintain it.

Appeal from ,Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed May 12, 1917. Reversed.

*George R. Allen,* of Kansas City, for the appellant.

*Arthur J. Stanley,* and *Guy E. Stanley,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action was begun to challenge the legality of a merger of two defendant corporations, The Fraternal Aid Association, a Kansas corporation, and the Supreme Lodge of the Fraternal Union of America, a Colorado corporation. Both of these organizations were typical fraternal insurance associations, having a large membership enrolled in local bodies or lodges with the usual ritualistic ceremonies of instruction and discipline, and governed by supreme councils composed of the general officials and representatives chosen directly or indirectly from their corporate memberships. The five plaintiffs who seek to maintain the action are members of The Fraternal Aid Association, and hold fraternal insurance policies in that organization.

The merger was effected in 1914, according to an ·agreed plan, parts of which read:

"Whereas, The Fraternal Aid Association of Lawrence, Kansas, has about forty thousand (40,000) members and the Supreme Lodge of The Fraternal Union of America of Denver, Colorado, has about forty thou-sand (40,000) members and that both of said organizations are fraternal beneficiary insurance associations duly organized under the laws of said states and have a lodge system and representative form of government;

"And Whereas, it is a self-evident proposition that the cost per capita of conducting the business and administering the affairs of a small

association is proportionately greater than the cost per capita of conducting the business and administering the affairs of a larger one;

"And Whereas, competition between fraternal beneficiary societies has caused the expense of procuring new members to be greatly increased, and the merger of two societies of the membership of The Fraternal Aid Association and Fraternal Union of America will make the combined societies more attractive to the general public thus enabling them to better carry on promotion work;

"And Whereas, a large saving in expenses of salaries, rent, clerk hire, stationery and advertising may be made and thus the aggregate cost of operating and conducting the business of said associations may be materially reduced and the growth of membership be more rapidly increased and promoted by merging and consolidating said organization into one;

"Now, Therefore, it is proposed by and with the supervision and approval of the Superintendent of Insurance of the State of Kansas and the Insurance Commissioner of the State of Colorado under the statutes of said states to merge and consolidate The Fraternal Aid Association and the Supreme Lodge of The Fraternal Union of America and unite the membership of The Fraternal Aid Association and the membership of the Supreme Lodge of The Fraternal Union of America in accordance with the following plan, to wit:

.    ..   ·   ·        \        .      .     .     .     .    .    .    .

"The charter and articles of incorporation òf the Şupreme Lodge of The Fraternal Union of America when amended shall be the charter and articles of incorporation of the consolidated society, and it shall have and enjoy all of the benefits and privileges now possessed by The Fraternal Aid Association under its articles of incorporation and shall have and enjoy all of the benefits and privileges now possessed by the Supreme Lodge of The Fraternal Union of America under its articles of incorporation.

.    .   .   .   .   .   .   .    .    .     .     .    .     .    .

"Fourth: The membership of The Fraternal Aid Association shall on the adoption of this contraet, as provided herein, and its approval by the insurance departments of Kansas and Colorado *ipso facto* become members of The Fraternal Aid Union and be entitled to all the rights, privileges and benefits of the membership of The Fraternal Aid Union to the same extent and purpose. as the present membership of The Fraternal Union of America are permitted to receive and enjoy, and shall pay the same rates of assessment, per capita tax and dues under the same conditions and be entitled to the same benefits as were provided by the certificates and laws of The Fraternal Aid Association in force at the date of the taking effect of this agreement.

.    .   .   .   .   .   .   .    .    .     .     .    .     ..

"Fourteenth: Provided, that all of the provisions of this contract relating to the rights, duties, b'enefits, privileges and burdens of the membership of The Fraternal Aid Association shall apply with equal force to

the membership of the Supreme Lodge of The Fraternal Aid Union of America.

"Fifteenth: This agreement shall be and become in full force and effect only when it shall have received:

"1. The approval and endorsement of the Superintendent of Insurance of the State of Kansas and the Insurance Commissioner of the State of Colorado to the proposed plan.

"2. This agreement shall have received the approval and be adopted by the members of the General Council of The Fraternal Aid Association in accordance with the laws of Kansas, and by the Supreme Lodge of The Fraternal Union of America at a special session thereof, called for that purpose by at least the number of votes required by the statutes of the State of Colorado relating to mergers and reinsurance of fraternal beneficiary societies."

Plaintiffs' petition recites all the pertinent facts, and alleges certain irregularities in bringing about this merger, that large sums of the Colorado corporation were expended to accomplish it, that the members of the Kansas corporation were not apprised of the details of the merger, and that certain matters pertaining thereto were fraudulently kept secret, that it was not effected in conformity to the by-laws of the order, that the merger is a bad bargain for the Kansas corporation, and that the result will be an increase in the insurance rates to the membership, including the plaintiffs. The prayer is for a receiver of the property of the Kansas corporation; that he be authorized to conduct its business, collect the membership dues and assessments; that an accounting be had with the Colorado corporation, and the affairs of the merged corporation be disentangled; and that the Kansas corporation be restored to its independence, etc.

The defendant, The Fraternal Aid Union, which is the amended corporate name of the merged corporations, filed a demurrer to this petition, setting up the usual grounds, "no legal capacity to sue, no cause of action stated," etc.

To obtain a decision of this court, the cause was halted below on the trial court's ruling on the demurrer, and appealed.

This merger was effected pursuant to chapter 210 of the Session Laws of Kansas of 1913 (Gen. Stat. 1915, §§ 5418-5420), which provides for the consolidation or merger of fraternal beneficiary societies, subject to the approval of the superintendent of insurance. In specific terms the act provides that such merger may be effected with a similar lawful cor-

poration of another state. Colorado's legislation is to the same general effect. (3 Colorado Statutes Annotated [Morrison & De Soto's edition], § 3160-O.) There is no infirmity in such legislation. (Const. of Kansas, Art. 12, § 1; *A. C. & P. Rld. Co. v. Comm'rs of Phillips Co.,* 25 Kan. 261; *C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.,* 36 Kan. 121, 12 Pac. 593; *H. & S. Rld. Co. v. Comm'rs of Kingman Co.,* 48 Kan. 70, 28 Pac. 1078; *West v. Bank,* 66 Kan. 524, 72 Pac. 252; *Illinois Life Ins. Co. v. Tully,* 174 Fed. 355; *Market Street Ry. Co. v. Hellman,* 109 Cal. 571, 42 Pac. 225; *Hale v. Cheshire Railroad,* 161 Mass. 443; 10 Cyc. 288, 293; 22 Cyc. 1403, 1419; 29 Cyc. 22; Noyes on Intercorporate Relations, §§ 43, 101; 7 R. C. L., §§ 131-135.)

The appellants contend that the plaintiffs have no right to maintain this action. It is familiar law that unless there is specific statutory authority authorizing a private person to challenge the regularity of official or corporate action, or unless such person suffers some peculiar injury thereby, he can not maintain such action. In certain matters relating to the imposition of taxes (Gen. Stat. 1915, § 7163) and to abate nuisances (Gen. Stat. 1915, § 5525) such special statutory authority has been granted.

The general rule is that the legality of corporate action or of the exercise of corporate powers can only be questioned in a direct proceeding in the name of the state by a public officer authorized to represent the state in court. Thus in an early case, *Miller v. Town of Palermo,* 12 Kan. 14, certain private citizens, who resided on a tract of land which some of their fellow inhabitants had undertaken more or less regularly to erect into a municipality, brought an action challenging the validity of the projected corporation. The defendant trustees of the town demurred on the ground that the plaintiffs had no legal capacity to sue in the action. The court sustained the demurrer, and on appeal, this court, speaking by Mr. Justice Brewer, said:

"Can private individuals, having no other interest than that of citizens, residents, and tax-payers of a supposed municipal corporation, maintain an action of *quo warranto* in their own names against such corporation, or must such action be brought in the name of the state, and by the attorney general or the county attorney? The district court

decided that the action must be in the name of the state, and in that opinion we concur. This court has had occasion, in two or three cases, to consider under what circumstances grievances of a public character can be investigated at the suit of a private individual, and the rule has been thus laid down: 'If the injury is one that peculiarly affects a person, he has his right of action; if it affects the whole community alike, their remedy is by proceedings by the state, through its appointed agencies.' *Craft v. Jackson Co.*, 5 Kan. 521. That case was one of an application for an injunction to restrain the issue of some county warrants; but the rule thus enunciated is of general application. It was followed by this court in two mandamus cases: *Bobbett v. Dresher, ex rel.*, 10 Kan. 9; *Turner v. Comm'rs of Jefferson Co.*, 10 Kan. 16. And we see no reason why it should not be applied to cases like the one at bar. The reasons for the rule are as imperative in this as in any class of cases. . . . The plaintiffs here show no interest adverse to the corporation defendant peculiar to themselves or different from those of the community in general. Hence, if they are authorized to maintain this action, any tax-payer and citizen of that community can summon the corporation into court to try the validity of its existence, and that, too, when the state which created the corporation is content to let it live." (pp. 15, 17.)

In *McMillen v. Butler*, 15 Kan. 62, which was an action begun by a private citizen, "resident, elector and tax-payer," to enjoin public officers from moving their offices to a newly chosen county seat, this court said:

"It is difficult to understand upon what principle it is supposed that this action may be maintained. There is no statute authorizing such an action; and we do not think that it can be maintained under any general principles of law or equity. . . . The plaintiff is not a public officer, prosecuting for the benefit of the public; and he does not show that he has any special or private interest in the subject-matter of the action which calls for any special interposition of the courts of justice for his particular benefit. Merely being a resident, a citizen, an elector, or a tax-payer, or all combined, does not authorize a private individual to summon the public officers into the courts of justice to answer for their official conduct. (*Bridge Company v. Wyandotte County*, 10 Kan. 326, 331, and cases there cited; *Miller v. Town of Palermo*, 12 Kan. 14.) His interest must be private and special in order to invoke the special intervention of the courts in his favor." (pp. 64, 65.)

This doctrine runs through all the later Kansas cases: (*In re Short, Petitioner*, 47 Kan. 250, 27 Pac. 1005; *A. T. & S. F. Rld. Co. v. Comm'rs of Sumner Co.*, 51 Kan. 617, 33 Pac. 312; *The State v. Shufford*, 77 Kan. 263, 267, and citations, 94 Pac. 137; 10 Cyc. 256-261.)

That the legislature was awake to the gravity of permitting

fraternal insurance organizations to be subjected to injudicious or ill-founded lawsuits attacking their corporate structure or conduct is evidenced by the precautions taken in the statute vesting in the superintendent of insurance supervisory powers over them, and while broad and sufficient powers are vested in that officer and in the attorney-general (Gen. Stat. 1915, § 5413) to insure correct corporate conduct on the part of these institutions, other litigiously disposed persons are largely forbidden to meddle with them. The statute, in part, reads: "No injunction shall be granted by any court in this state against any association authorized to do business under this act, except on application of the attorney-general, at the request of the superintendent of insurance."

The wisdom of this legislation is obvious. Where the rights of many thousands of members and beneficiaries are involved, as in this case, where the public officers authorized and charged with the duty of supervising their corporate conduct and of scrutinizing their financial affairs have approved what has been undertaken and consummated, where the assets have been commingled and the fraternal structure and internal economy of the associations have been readjusted to their new conditions, where neither the state of Kansas nor the state of Colorado has seen fit to question what has been done pursuant to their respective laws and pursuant to their official supervision, a private citizen would need to present a case showing some powerful and special equity on his side before he should be permitted to raise a judicial inquiry touching their corporate conduct.

In the facts alleged and the relief prayed for in this action the proceeding in effect is *quo warranto*. Except in most unusual cases, such an action can only be maintained in the name of the state by its proper legal representative—the attorney-general, or, perhaps, by the county attorney. And even if so maintained, the relief to be given is to some extent discretionary with the court. (*City of Topeka v. Water Co.*, 58 Kan. 349, 353, 49 Pac. 79.) Where, as most likely in the case at bar, the result would be to wreck an institution that is doing a beneficial and humanitarian work notwithstanding some possible defects in its financial or economic structure, the state's responsible legal representative should consider

well whether such action should be instituted (*The State v. Bowden,* 80 Kan. 49, 56, 57, 101 Pac. 654), and the court would consider with profound solicitude whether the remedy prayed for was not worse than the evil complained of. At all events, it is clear that the plaintiffs can not maintain this action. The petition did not state a cause of action redressible at the instance of the plaintiffs in their individual capacity. (31 Cyc. 296.)

The exhaustive brief for the answering defendant, The Fraternal Aid Union, which is the appellant here, covers many matters which need not be considered. The judgment is reversed, and the cause remanded with instructions to sustain the demurrer to plaintiffs' petition.