(122 So. 36)

**GRAND LODGE, K. P., et al. v. SHORTER et al.   (6 Div. 208.)**

Supreme Court of Alabama.   Jan. 31, 1929.

As Modified, on Denial of Rehearing, May 2, 1929.

294

E. A. Brown, Fort, Beddow & Ray, G. Ernest Jones, Hugh A. Locke, and Forney Johnston, all of Birmingham, for appellants.

Altman & Koenig, of Birmingham, and Inzer, Inzer & Davis, of Gadsden, for appellees.

FOSTER, J. The bill in equity was filed in this case by Phillip Shorter and about fourteen others as complainants against Grand Lodge Knights of Pythias of Alabama as respondent. The respondent is a corporation organized under the laws of Alabama, and is a fraternal benevolent society for colored people.

The bill alleges: That the respondent has an endowment or insurance department and issues to its members endowment policies. That to support the endowment department, each member of a subordinate lodge must pay each month one dollar, of which a part goes to a mortuary fund, and the remainder to the expense fund of the endowment department. That on, to wit, December 31, 1926, there was in force, to wit, 15,313 policies, issued, and it represented insurance aggregating $3,688,-000 in force. That these figures have largely increased since that time. That each of the complainants own and hold one such policy of insurance. That the endowment department of defendant is managed by a board

of endowment. This board is elected by and is an agency of defendant. The constitution provides that the funds of this department shall not be used for any purpose but payment of death claims and incidental expenses of the department. The bill then alleges that the officers and agents of defendant have been guilty of negligence, misappropriation, graft, fraud, gross mismanagement, reckless extravagance, and waste in administering the funds of this department, which has resulted in depleting the mortuary fund, and will result in entirely wasting and destroying the fund. That it is necessary to preserve such fund from destruction. That over the protests and warning of the superintendent of insurance of Alabama the endowment board has made so-called loans from the mortuary fund to the Grand Lodge for the expenses of the lodge, until such amount has reached the sum of $54,709.88 (at the time of the hearing it was $57,219.63). This is unsecured in any manner. The bill then recites a catalogue of fraudulent transactions alleged to have occurred by the members of this board, consisting of real estate deals, and other investments of moneys of the mortuary fund, in which such members personally profited at the expense of such fund to the extent of some $40,000, or more, which are alleged to have been a fraud upon such fund. The details of each transaction are alleged in the bill. The officers and agents of the defendant who it is alleged committed all such wrongs are now in control of the entire business of the defendant, including said mortuary fund. The bill attributes the mismanagement and misuse of the funds to the negligence and bad faith of said officers and agents of defendant.

By an amendment it was alleged: That an effort was made to bring to the attention of the Grand Lodge meeting of defendant the complaints mentioned, but that said lodge meeting was under the control of the officers committing the wrongs, and that they could get no redress there. That the Alabama superintendent of insurance made protest of the manner in which the fund was depleted by a written communication and report of an actuary. This notice directed that no further sums be transferred from the mortuary fund for use for any other than mortuary purposes. The letter was a severe arraignment of the management of this fund, causing its depletion. That regardless of such protest the practice continued consistently, and there was another communication from the superintendent of insurance calling attention to a continuance of the extravagance and misuse of the endowment fund. The bill as so amended prayed that the mortuary fund be preserved and protected, and for the appointment of a receiver of the endowment department to operate the same, and keep its effects and affairs separate from the fraternal department until it can with safety to the members and policyholders be turned back to the operation and control of respondent.

The corporation itself (the Grand Lodge) is the only party respondent. No accounting is sought against the derelict officers.

Defendant on the same day, filed demurrer to the bill as to its merits and pleas to the jurisdiction of the subject-matter united with pleas to the jurisdiction of the person of defendant, and moved to quash the service of summons because it was not executed on the superintendent of insurance, and subsequently filed an amendment of the demurrers on the merits. If Code 1923, § 8474, had been complied with by appellant (there is no allegation to that effect), whether that section provides the only method of service in all forms of action brought either in accordance with the article of the Code of which it is a part, or in actions not mentioned in the Code, and whether section 9421 is another method of service applicable to actions not provided for in said article of the Code, it is not necessary here to decide, because the motion to quash service was waived by the pleading on the merits. Hart v. Turk, 15 Ala. 675; Holley v. Younge, 27 Ala. 203; Woodruff v. Hundley, 127 Ala. 640, 656, 29 So. 98, 85 Am. St. Rep. 145; Strouse v. Leipf, 101 Ala. 433, 14 So. 667, 23 L. R. A. 622, 46 Am. St. Rep. 122; Steele v. Booker, 205 Ala. 210, 87 So. 208; Ex parte Dunlap, 209 Ala. 453, 96 So. 441; 1 C. J. 268.

In various ways objection was made to the bill because it was not filed on behalf of all the policyholders and because the derelict officers were not made parties; that the Attorney General could only file the bill; that no sufficient effort was made through the organization to correct the wrongs; that the bill is solely to appoint a receiver, which is only an ancillary remedy; and that the bill has no independent equity in connection with which the receivership is sought. The court overruled all the foregoing objections to the bill, and appellant assigns as error the decree in this respect.

We cannot agree with appellant in its interpretation of the nature and purpose of the bill. It is not a bill to dissolve the corporation and wind up its affairs. It does not seek a receiver of all the affairs and business of the corporation, as was the case in Albach v. Fraternal Aid Union, 100 Kan. 511, 164 P. 1065; Baird v. Modern Samaritan, 162 Minn. 274, 202 N. W. 498; Cummings v. Supreme Council of Royal Arcanum (D. C.) 247 F. 992. It does not seek an accounting against the officers and agents of the corporation for their misconduct. But it is filed on the theory that the corporation as such is by its constitution and by-laws made an express trustee of the endowment fund created for the protection of the policyholders as a trust fund; that such trustee acting through its officers and agents has depleted and mismanaged the fund; that the officers have made

individual gain in connection with its investments; and that a court of equity will interfere with the operations of the trustee under such circumstances, and take charge of and administer the trust. Complainants are beneficiaries of this trust fund, and have a direct interest in seeing that its integrity is maintained, that its proper status is restored, and that it is properly managed. They do not file this suit in a representative capacity. It is an individual suit. It may be assimilated to a suit by a taxpayer to prevent a city from wasting public funds. Though it may result in benefit to others, the purpose is to protect the rights of complainants. Gillespie v. Gibbs, 147 Ala. 449, 41 So. 868; Inge v. Board, 135 Ala. 187, 53 So. 678, 93 Am. St. Rep. 20; N. O. M. & C. R. R. Co. v. Dunn, 51 Ala. 128.

This situation is readily distinguishable from one wherein funds are sought to be distributed or property divided among its owners, as where a corporation is sought to be dissolved. In such instance all the interested parties should be duly represented, or made parties. Such was the situation in Ala. Fidelity Mortgage & Bond Co. v. Dubberly, 198 Ala. 545, 73 So. 911, and McKleroy v. Gadsden, 126 Ala. 184, 28 So. 660, and Noble v. Gadsden, 133 Ala. 250, 31 So. 856, 91 Am. St. Rep. 27, cited by appellant. Complainant may maintain this suit without the other beneficiaries, though the others will share in the benefits of it. Section 10450 of the Code expressly so provides.

It is also claimed that the derelict officers and agents of defendant are necessary parties. We do not concur in that view and think the contention results from a failure fully to consider the nature and purpose of the bill. The corporation is the trustee, and the fact that certain parties were acting for it is but a fortuitous circumstance. Complainants expect the corporation to administer the trust properly, and failing to do so, it is responsible and is the only necessary party defendant in a suit to administer the trust. On the same principle it was held that a city in its corporate capacity is a necessary party in a suit to prevent a diversion of its funds and its officers proposing to divert its funds are only proper parties. Gillespie v. Gibbs, supra.

The claim is also made that there is no sufficient effort shown to correct the wrongs through the organization. We will not here consider the sufficiency of any such alleged effort, nor excuse for a failure to do so. We, of course, recognize the rule that the corporation must recover its own funds against officers for misconduct, and that before an individual stockholder may sue to redress such wrongs, he must make demand upon the governing board of the corporation or show a legal excuse. Howze v. Harrison, 165 Ala. 150, 51 So. 614. The simple answer to appellants' objection at this point is that there is no effort here to recover anything of the officers or agents committing the wrongs. Such allegations of wrong are made as a charge that there has been a breach of trust by the corporation as trustee, and for no other purpose. This bill is for relief against the corporation only. Therefore there is no necessity for others to be made parties respondent.

█ It is also contended that it is necessary for a suit of this nature to be instituted by the Attorney General under section 8498 of the Code. The Attorney General filed a bill of similar import, if not in the exact language of the one here considered. Appellants procured its dismissal. McCall v. Grand Lodge, 217 Ala. 194, 115 So. 254. This court in that case showed that section 8498 applied to dissolution proceedings only, and as the bill did not seek a dissolution it was not properly filed by the Attorney General. This court referred to the fact that the present appellant by pleas in abatement made and argued two contentions; (1) That the report and recommendation by the commissioner of insurance is a condition precedent to the institution of a suit under the statute (sections 8495–8498), and (2) that the Attorney General has no authority in any event to institute a suit of this character—in effect that the above-mentioned statutes do not apply to a suit of this nature. The opinion shows that the latter contention of appellants was favorably considered by the court, resulting in a ruling that the Code sections, as contended, look to quo warranto proceedings leading to a dissolution and closing of the affairs of the corporation. It was there pointed out that a suit such as this did not have as its purpose a dissolution of the corporation.

Appellants now contend in brief that the ruling on said appeal following one of the contentions it there made, was dictum and erroneous, and that the result there reached should have been predicated on the first contention noted above. It may be observed here that such first contention is not sustained by the authority cited by counsel on that appeal (Chicago Mut. Life Indemnity Ass'n v. Hunt, 127 Ill. 257, 20 N. E. 55, 2 L. R. A. 549, nor in Baird v. Modern Samaritan, supra).

██ We adhere to the position heretofore taken that the Attorney General is not the proper party to prosecute a cause of the nature here under consideration and maintain that a beneficiary of a trust fund may invoke interference in equity when the trustee makes disposition of the funds in violation of the trust "in selfish disregard of the claims of other beneficiaries" (McDonald v. McDonald, 92 Ala. 537, 544, 9 So. 195, 197), and that "dishonesty, faithlessness, fraud, incompetency, or inefficiency, sufficiently averred in its constituent facts, would justify the displacement of the trustee or assignee, and the transfer of the trust to the chancery court" (Jones v. McPhillips, 77 Ala. 314, 322), and that "whenever rendered necessary, whether by

the ignorance, wilfulness, or bad faith of the trustee, the court, on proper application, will take jurisdiction, and see that the trust is executed in its true spirit" (Jones v. Mc-Phillips, supra, page 321); and that section 10450 (6102) authorizes the removal of a trustee on the petition of any person interested in the execution of the trust, when he has violated the trust, or when for any reason he is an unsuitable person to execute the trust; and that this section is but a declaration of the law as it existed prior thereto (Ex parte Jonas, 186 Ala. 567, 577, et seq., 64 So. 960).

██ It is well understood that a receivership is an ancillary remedy in aid of the primary object of the litigation, and that to sustain a bill for a receiver there must be some distinct right to be protected, and some other relief sought, to which the receivership is an aid. Cassells Mills v. First Nat. Bank, 187 Ala. 325, 65 So. 820. The question of the appointment of a receiver has, therefore, as one of its elements, the equity of the bill otherwise considered. We have shown that the bill has equity for the preservation and administration of an express trust. If a sufficient showing is made therefor, the court should appoint a receiver of the trust fund. McCall v. Grand Lodge, supra.

██ There is no effort to secure the appointment of a receiver of all the affairs of the corporation, neither was such a receiver appointed. The chancery court will not as a rule take charge of a corporation and wind up its affairs except in case of insolvency. Exceptions are when there is no properly constituted governing board, or because there are such dissensions among them as to make it impossible to carry on its business. Howze v. Harrison, supra; Jasper v. Wallis, 123 Ala. 656, 26 So. 659; Edison v. Edison United Phonograph Co., 52 N. J. Eq. 620, 29 A. 195.

The McCall Case, seeking redress through the state authorities, was filed July 9, 1927. A letter of the superintendent of insurance to appellant was dated May 14, 1927. In it he demanded that the illegal practice be discontinued. The bill in the instant case was filed in April, 1928. As of June 15, 1928, Frank M. Speakman, an actuary employed by the state, made to the insurance department a report, showing that defendant had misapplied $57,219.63 of this mortuary fund. The report showed extravagant and doubtful expenditures of the trust fund for so-called traveling and other expenses, not shown to be chargeable to this fund. It also stated "that this is a one man society, being run almost entirely by R. A. Blount, and those who dare oppose him would be removed. Blount has held the office of grand chancellor for a good many years, and holds complete control over all the delegates attending the grand lodge meetings." This report was offered in evidence by appellant, and is the most favorable to it of any report in evidence. The financial condition of the grand lodge is commended. It is shown to be solvent and financially to compare favorably with other like institutions. The most serious criticism of the management has been the habit each year of using moneys from the mortuary fund to defray grand lodge expenses, in violation of the trust until the amount has reached an enormous sum in excess of $57,000, extravagant and doubtful expense items, and improper manner of checking them, negligence in collecting rents, and improper handling of real estate, failure to earn on bank balances, and the claim of individual speculation at the expense of this fund. It is shown that in July, 1927, after the McCall Case was filed, the Grand Lodge passed a resolution assessing the members twenty cents per month for the purpose of defraying the grand lodge expenses. This indebtedness by the Grand Lodge to the endowment department was dropped from its account as an asset of the mortuary fund by the management. But the actuary of the insurance department of the state required it to be replaced in its accounts. The actuary further reports that it is contemplated that the grand lodge may be in position to refund a "good portion of the moneys it now owes" the mortuary fund. No showing has been made that any of it has been refunded. The management remains in the same hands. In view of the fact that those who made such diversion of the mortuary funds may, upon proper showing, be made personally to account to this fund and reimburse it for such misuses, and in view of the claim that its present officers and agents have speculated upon said fund to their own gain, for which they could be brought to account, if duly proven, and the further fact that the defendant as trustee of said fund has not and probably will not take proceedings to compel such officers to make account to such fund, as long as said fund is under the management of the officers alleged to have committed the wrongs and the mismanagement of the fund and extravagant expenditures charged to it and improper practices shown by the actuary's report, it would seem quite appropriate that there should be a receiver of said trust fund, with full authority, among other things, to enforce such rights as exist against the officers or agents of defendant and others for any liability shown to be due said fund, and receive, handle, and dispose of the fund pursuant to the regulations of the order. The equity of the bill relates only to the trust fund, and does not embrace the management of the business of appellant, other than the management of that fund.

██ The receiver appointed by the court was authorized and directed to take charge of the entire endowment or insurance department of appellant, and all its activities, business, and affairs, and to conduct said department of appellant's business. We do not

think that the equities of the bill justify an extension of the power of the receiver to the conduct of the insurance department of appellant's business, and the decree should be modified so as to eliminate such powers and duties from his authority. The purpose of the receivership justified by the equity of the bill is to take charge of the endowment fund (rather than the endowment department) embracing both the mortuary and expense funds thereof, and administer them according to the rules of the order (constituting the terms of the express trust), and to cause said mortuary fund to be restored to its proper status, and to conduct such proceedings and suits as may be necessary for that purpose under the direction of the court. The receiver should receive from the secretary payment of all dues which should go into said fund during the term of his receivership. The expenses incident to the receivership and of the conduct of the endowment department should be paid out of the expense fund of said department by the receiver, and no part of it paid out of the mortuary fund thereof, but all should be administered by the receiver, and all payments approved by him before they are made.

The terms of the decree carry out the foregoing views in all respects except as to the conduct of the business of the endowment department of appellant by the receiver.

█ Knights of Pythias of North America alleged to be organized and chartered under the laws of the United States seeks an intervention, and has presented to this court its petition for mandamus to the trial judge directing that it be allowed to intervene (the judge having denied this right). Petitioner has shown no interest in, right to, or connection with, the trust fund in question. Merely because appellant is alleged to be under the sovereign jurisdiction (fraternally) of petitioner as a Supreme Lodge whose jurisdiction extends to North and South America, Europe, Asia, Africa, and Australia, does not show any connection with the trust fund here involved.

█ The foregoing expresses the views of FOSTER, J., in which GARDNER, J., concurs. But the majority of the court, consisting of ANDERSON, C. J., and SAYRE, THOMAS, and BOULDIN, JJ., are of the opinion that the demurrer to the bill for want of necessary parties should be sustained. The necessary parties are those officers and agents of appellant who are charged with having committed the alleged wrongs; but all of said Justices concur in the opinion in other respects.

Reversed and remanded; mandamus denied.

ANDERSON, C. J., and SAYRE, THOMAS, and BOULDIN, JJ., concur.
GARDNER and FOSTER, JJ., dissent.
BROWN, J., not sitting.

On Appellants' Application for a Further Modification of the Original Opinion.

PER CURIAM. In the event of an amendment of the bill adding the parties whom this court has found to be necessary, and an application for a continuation of the receivership, the court below will consider and determine the merits of such application, as they may then appear, after giving the added parties, as well as the others, an opportunity then to be heard.

With the foregoing statement; the application for rehearing is overruled.