209 So.2d 403

Hugh ASHURST et al.

v.

PREFERRED LIFE ASSURANCE SOCIETY OF MONTGOMERY, Alabama et al.

3 Div. 186.

Supreme Court of Alabama.

April 11, 1968.

122

Sol E. Brinsfield, Jr., and Jones, Murray & Stewart, Montgomery, for appellants.

Godbold, Hobbs & Copeland, Montgomery, for appellees.

LAWSON, Justice.

This is a class action filed in the Circuit Court of Montgomery County, in Equity,

against Preferred Life Assurance Society of Montgomery, sometimes hereafter referred to as the Assurance Society, and against Preferred Life Insurance Company, a corporation, sometimes hereafter referred to as the Insurance Company.

The Assurance Society was authorized to do business in 1929 as an incorporated nonstock fraternal benefit society under the provisions of §§ 8439–8508, 1923 Code of Alabama.

In 1962 the Assurance Society converted itself into the Insurance Company, a stock life insurance corporation. The conversion was effectuated under the provisions now codified as §§ 236–244, Title 28, Code of Alabama 1940. The provisions so codified were originally enacted by the Legislature of this state in 1927, before the Assurance Society was organized. See Act 537, approved September 6, 1927, General Acts of Alabama 1927, p. 624.

The original bill was filed on April 22, 1964, by eight individuals who averred that "they are now and have been for many years policyholders" in the Assurance Society and that:

> "C. There are several thousand policyholders of Preferred Life Assurance Society, * * * and such persons constitute a class so numerous as to make it impractical to bring them all before the Court, and your Complainants fairly represent such persons, and sue on behalf of all of said class, inviting any of such persons who may care to do so to join with your Complainants in this suit; * * *"

On February 1, 1965, the complainants filed an "Amended Complaint," wherein certain of the conversion statutes were alleged to be unconstitutional. We may sometimes hereinafter refer to the amended complaint simply as the bill, since it contains substantially all of the averments of the original bill as well as those added by the "Amended Complaint."

The complainants concede that in effectuating the conversion, the Assurance Society substantially complied with the conversion statutes, §§ 236–244, Title 28, 1940 Code, which sections will be set out in the report of the case by the court reporter.

This litigation resulted from a disagreement between complainants and the Insurance Company in regard to the disposition to be made of the surplus accumulated by the Assurance Society at the time of the conversion. The Insurance Company took the position that the surplus was property of the Assurance Society, which after the conversion became the property of the Insurance Company under the provisions of § 242, Title 28, Code 1940. The complainants, on the other hand, insisted that upon conversion the surplus should have been returned to the members of the Assurance Society, its policyholders.

The bill contained seven special prayers, in addition to a prayer for general relief, but we entertain the view that the ultimate objectives of the complainants are found in special prayers 2 and 4, which ask the court to:

> "2. Require an audit of the books and records of Preferred Life Assurance Company (sic) and an appraisal of its assets to determine accurately the true surplus of the Society.

> \* \* \* \* \* \*

> "4. Require Preferred Life Insurance Company to distribute the true surplus of Preferred Life Assurance Society to its members as of date of conversion in proportion to their ownership of said surplus as determined by the Court, or, in the alternative, to require said company to issue stock to all of the policyholders of Preferred Life Assurance Society as of the date of conversion in accordance with the plan of distribution approved by the Court, and based upon their ownership of or interest in the surplus of said Society."

In brief filed here by the complainants below, the appellants here, they assert that they were entitled to recover the surplus of the Assurance Society at the time of the conversion for its members on these grounds:

"1. The ruling in the Justice case was binding on the society and required a return of the surplus.

"2. The society's officers had breached their trust and unjustly enriched themselves.

"3. The conversion statute is unconstitutional if it permits the surplus of the Society to be taken away from the members and given to the stock company without notice and without compensation."

We will consider those grounds as being the complainants' summary of the stating portion of the bill and, hence, we see no occasion to burden this opinion with a delineation of all of the averments of the bill.

The "Justice case" referred to in Ground 1 above is a case decided by the Circuit Court of Montgomery County, in Equity, in 1951, which will be considered later in this opinion.

Because the bill sought declaratory relief and alleged statutes of this state to be unconstitutional, the Attorney General of Alabama was served with a copy of the bill. —§ 166, Title 7, Code 1940. The Attorney General filed an answer wherein he denied that the statutes involved were unconstitutional but he did not participate further in the trial below.

The Insurance Company filed an answer to the bill, which contains the following language:

"* * * this answer is filed for said corporate entity under its present name of Preferred Life Insurance Company and its former name of Preferred Life Assurance Society."

We see no occasion to refer at length to the contents of that answer. It admitted certain averments of the bill, but denied all of the averments upon which the complainants based their right to relief for which they prayed.

This cause came on for a hearing on February 11, 1965, which was concluded on February 15, 1965. On March 19, 1965, the trial court rendered a final decree wherein all of the relief sought by complainants was denied and the bill was dismissed. On April 15, 1965, the complainants who were living at the time the final decree was rendered appealed to this court from the decree of March 19, 1965.

In the bill the complainants alleged, in part, as follows:

"J. In 1949, Preferred Life Assurance Society proposed to convert to a stock company and at that time submitted to its membership and to the Insurance Department of Alabama and to the Securities Commissioner of Alabama a plan in all respects similar to the plan it has adopted in 1962, with *one major* exception. In the 1949 plan the surplus of the Society was to be distributed to its members as of the date the Society converted to a stock company.

"Certain of the Society's members brought suit against the Society in the Circuit Court of Montgomery County (J. E. Justice, Jr., et al. v. Preferred Life Assurance Society, Case No. 20776) objecting to the plan of conversion and other matters. After more than a year of litigation, the Circuit Court approved the plan of conversion by decree dated June 16, 1951, in which the Court stated:

" 'The Society proposed that examiners representing the States in which it does business determine the surplus as of the date of conversion and that this be distributed to the members. This is fair and reasonable and the Court finds no merit in Complainant's contention that the examiners are not competent to make

such determination or that some method of accounting other than that required by State Insurance Departments should be employed in determining the amount of surplus available for distribution.'

"The right of the policyholders or members of Preferred Life Assurance Society to receive the surplus of the Society upon its conversion to a stock company has been previously determined by this Court in the Justice case, and is a conclusive determination of this right, binding upon the Society."

The respondent, Preferred Life Insurance Company, a corporation, in its answer averred as follows:

"J. For answer to par. J, Respondent admits that conversion of the corporation in 1962 was carried out in a manner similar to a proposal made in 1949 for conversion. The said 1949 proposal was made by the Board of Trustees of the Society and a meeting of the Supreme Lodge was called to consider said proposal, as required by the conversion law. Said meeting of the Supreme Lodge was never held, in fact was enjoined under an injunction or restraining order obtained (by an attorney of counsel for Complainants in the present case) in the above-described case of Justice et al. v. Preferred Life et al. The Supreme Lodge, the supreme governing and legislative body of the Society, did not authorize conversion in 1949, did not adopt said conversion proposal or even consider it, and did not adopt any procedure or plan for conversion until 1962.

"Respondent alleges that in said case of Justice et al. v. Preferred Life et al, the Circuit Court of Montgomery County, Alabama in Equity, denied the claim of Complainants therein that the 1949 conversion proposal was illegal and found that said proposal complied with the requirements set out in the Code for such conversion and 'went further than required by law.' The question of whether the corporate surplus as a matter of law

vested in the stock company as an asset thereof and could not be distributed was not an issue in said case and was not determined in said case.

"Respondent alleges that since the said *Justice* case was determined the Society has been advised by its attorneys of their opinion that the corporate surplus legally cannot be dissipated as an incident of conversion and that said surplus is vested in the stock company and must not be impaired by reason of conversion. In addition the officers and Board of Trustees and Supreme Lodge of the Society, in the exercise of their judgment and discretion, have concluded that it would be unfair to policyholders and a grave mistake of business judgment to allow dissipation of the surplus.

"Respondent denies all other allegations of par. J."

During the course of the trial, the complainants introduced in evidence, as exhibits, the bill filed in the Justice case, supra, as well as the answer of the respondents and the final decree entered in that case by the Circuit Court of Montgomery County, in Equity, on June 16, 1961.

The first four assignments of error are to the effect that the trial court erred in not decreeing that the true surplus owned by the Assurance Society at the time of the conversion be returned to the members of the Society, its policyholders, in cash or stock, in that the decree in the Justice case, supra, had held that such a distribution should be made, and that such holding was binding on the trial court whose decree is presently under review.

In other words, the complainants below, the appellants here, by their first four assignments of error rely for reversal upon the doctrine of res judicata or estoppel by judgment.

■ The general principle is well established that an existing final judgment, decree or other final adjudication rendered

upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions in the same or any other tribunal of concurrent jurisdiction *on the points and matters in issue and adjudicated in the first suit.—* Alabama Power Co. v. Thompson, 250 Ala. 7, 32 So.2d 795, 9 A.L.R.2d 974; Elmore Quillian & Co. v. Henderson-Mizell Mercantile Co., 179 Ala. 548, 60 So. 820, 43 L.R.A.,N.S., 950; Hall & Farley v. Alabama Terminal & Improvement Co., 173 Ala. 398, 56 So. 235.

With that principle in mind, we come to a consideration of the record as it relates to the Justice case, supra. In 1949 steps were taken by the Board of Trustees of the Assurance Society to convert itself into a stock life insurance corporation. Before the proposal could be submitted to the Supreme Lodge, the supreme governing and legislative body of the Assurance Society, J. E. Justice, Jr., a policyholder and member of the Assurance Society, filed a bill in the Circuit Court of Montgomery County, in Equity, which was filed on behalf of himself and other policyholders and members of the Assurance Society, against Preferred Life Assurance Society of Montgomery, S. H. Longshore, A. F. Whiting, J. J. Warren, Pat Kirkpatrick, B. Cosby Bird and A. B. Merchant. According to the averments of the bill in the Justice case, supra, S. H. Longshore was president and general manager of the Assurance Society, A. F. Whiting its vice-president and general counsel, and J. J. Warren its secretary-treasurer. The other individual respondents, along with Longshore, Whiting and Warren, comprised the Board of Trustees of the Assurance Society. One aspect of the conversion proposal made by the Board of Trustees but not acted upon by the Supreme Lodge prior to the time the Justice case, supra, was instituted, was that the surplus then held by the Assurance Society be distributed to its member-policyholders.

The Justice bill averred that the Assurance Society had illegally promoted the sale of its contingent endowment policy in various ways, which policy was alleged to be an illegal lottery. The officers and trustees who were made respondents to the bill were charged with gross mismanagement, wasting assets and fraud. In regard to the surplus of the Assurance Society which the Justice bill alleged the respondents proposed to distribute to the member-policyholders of the Assurance Society, the bill alleged as follows:

"The Respondents have so grossly mismanaged the Society's affairs and have so fraudulently operated the business that they have depleted the surplus funds which belonged to the policyholders by almost two hundred thousand dollars.

"The Respondents have fraudulently, systematically and with gross disregard for the interests of their policyholders wasted the surplus of the Society or they have systematically reduced the surplus of the Society and converted it to assets of the Society which will ultimately belong to its new stockholders which is equally a fraud on the policyholders."

The Justice bill prayed that upon the filing of the bill a restraining order be issued:

" * * * enjoining the Society or its Trustees or Supreme Lodge from proceeding with its or their plans to convert the Society to a stock company and enjoining them from any action whatsoever designed to make any change in the operation of the Society until after a full hearing of this cause; * * * "

The Justice bill further prayed that upon a final hearing the court would enjoin the Assurance Society from converting from a fraternal benefit society to a stock company, the removal of all officers and trustees of the Assurance Society; the appointment of a receiver to operate the Assurance Society or to liquidate it; an injunction against the sale of contingent endowment policies and the return to member policyholders of all premiums ever collected on them; an accounting by all officers

and trustees of "all funds illegally or unjustly received by them or paid to them as a result of the fraud and mismanagement of the Society's Officers and Trustees, and that said funds be distributed among the policyholders."

We think it clear from the foregoing summary of the bill filed in the Justice case that the complainants did not in any wise make an issue concerning the right of the Assurance Society to distribute its surplus to its members-policyholders. While the bill did in effect seek to have the court order that no distribution of such surplus be made until after an accounting could be held, it was not the position of the complainants in the Justice case that the court determine whether under the laws of this state the surplus of the Assurance Society had to be distributed to its member-policyholders upon conversion to a stock life insurance corporation.

Upon the filing of the Justice complaint, the Circuit Court of Montgomery County, in Equity, issued a temporary injunction prohibiting the conversion pending a hearing.

Thereafter the respondents filed their answer. At this point in the opinion we will set out only the parts of the answer which appellants, the complainants below, contend are pertinent to the question at hand. We quote:

"8. * * * They admit that in the resolution sent to such policyholders it was stated that as an incident of the proposed conversion the surplus of the Society would be distributed to the policyholders. They admit that in a fraternal benefit society the assets of the order belong, in a sense, to the members, but they deny the inference that all or anything more than a small fraction, of such assets would ever be available for distribution to said members as a group.

"They admit that when conversion is completed the stock life insurance company would be owned by its stockholders, but they deny the inference that the assets of such stock company will be available for distribution to such stockholders; they aver that the surplus of the Society will be distributed to members as an incident of conversion * * * Further, they aver that under the plan of conversion, of which plan all policyholders have been notified, every policyholder has been guaranteed his right to become a stockholder and thus an owner of whatever assets the stock company will possess * *.

* * * * * *

"11. For answer to the eleventh paragraph of the bill of complaint, the respondents deny the complainant will be injured in any way by conversion of the Society to a stock company, but aver that the amount of surplus as of the date of conversion will be determined by official audit of the said Society's books and affairs by representatives of the states in which it does business, that complainant's pro rata share of such surplus will be paid to him in cash and that his right to subscribe to stock of the stock company and thereby become a partial owner of said company and participate in the management thereof, has been and will be fully protected. They deny that such conversion need be carried out under the direction of a receiver appointed by the Court, and say that the plan for conversion in every detail is in accord with the laws of Alabama, or else goes beyond said laws in protecting policyholders, that said plan of conversion has been presented to the insurance departments of every state in which the Society does business and has been approved by every such department.

* * * * * * "

After the filing of the respondents' answer the case came on for a hearing before the trial judge and was vigorously litigated.

The trial court on June 16, 1951, rendered its final decree wherein, as heretofore indicated, all of the relief sought by the complainant was denied. No appeal was taken.

The decree of the trial court in the Justice case, supra, summarized the issues as follows:

"(1) Alleged fraud and mismanagement in the operation of the Society's contingent endowment insurance plan.

"(2) Alleged failure to conduct the Society as a fraternal order in accordance with the laws of Alabama.

"(3) Alleged mismanagement and waste of corporate assets.

"(4) Alleged impropriety of a proposal to convert the society to a stock insurance company."

In our opinion, in no place in the decree did the trial court indicate that it had before it for determination the question as to whether or not under the conversion statutes of this state a fraternal benefit society such as the Assurance Society here involved was required to distribute its surplus in cash or in stock to its member-policyholders upon conversion to a stock life insurance corporation.

The appellants, the complainants below, in their original brief filed in this court, call attention to the provisions of Paragraph 4 of the final decree, which reads:

"Complainants, while opposing the Society's proposed plan of conversion to a stock company, admit that the plan complies with requirements set out in the Code for such conversion. Rather than being an unfair or improper scheme as alleged, it appears that the Society went further than required by law to safeguard all interests of its members. The plan was submitted to the Department of Insurance of the State of Alabama and was approved by the Superintendent of Insurance in a detailed written statement. Similarly it was submitted to the insurance departments of all states in which the Society writes business. Members were notified in advance of the proposal to convert, though this is not required by statute, and the right of the members to subscribe to stock in the new company was fully protected. The Society proposed that examiners representing the states in which it does business determine the surplus as of the date of conversion and that this be distributed to the members. This is fair and reasonable, and the Court finds no merit in the complainants' contention that the examiners are not competent to make such determination or that some method of accounting other than that required by the state insurance departments should be employed in determining the amount of surplus available for distribution."

We do not construe Paragraph 4 of the final decree as in any wise supporting the appellants' contention. In fact, there is language in that paragraph to the effect that the Assurance Society went further than required by law to safeguard all interests of its members and we think this statement can be attributed to the proposal on the part of the Assurance Society at that time to distribute its surplus to its member-policyholders. The observation made by the trial court in Paragraph 4 of its decree to the effect that such distribution is fair and reasonable is certainly not the equivalent of a holding that such distribution was required by the statutes of this state relating to the conversion of a fraternal benefit society such as the Assurance Society into a stock life insurance corporation.

We hold that the Justice case, supra, did not hold that the proposed conversion could not be legally effectuated unless the Assurance Society distributed to its member-policyholders any surplus which it might have at the time of the proposed conversion. That question, in our opinion, was not an issue in that case.

We have a number of cases which, in effect, hold that the doctrine of res judicata is far broader than the determination of the question directly involved in the prior action, and the prior judgment extends to all questions falling within the scope of the original action, and which could have been

presented by exercising due diligence, and extends to both the claim and the defense. —Sims v. City of Birmingham, 254 Ala. 598, 49 So.2d 302; Crowson v. Cody, 215 Ala. 150, 110 So. 46; Fife v. Pioneer Lumber Co., 237 Ala. 92, 185 So. 759. For other cases to the same effect see Ala.Dig., Judgment, ☞713(2).

Appellants rely on the principle enunciated in the cases last above cited in support of their first four assignments of error.

We do not entertain the view that the holdings in those cases are controlling here. What might or could have been raised is not determined by the fact alone that the two parties were adversaries in court, but by rational judicial standards applied to the issues and subject matter about which they were litigating. As part of a bill charging all kinds of fraud and mismanagement extending over more than twenty years, Justice objected to only two aspects of the conversion plan to be submitted to the Supreme Lodge for its consideration. In support of his effort to prevent the conversion, Justice might well have raised the right of the Assurance Society to distribute its surplus upon conversion, but, of course, such a distribution met with his approval and his real complaint seems to have been that the surplus to be distributed was less than it should have been if the Assurance Society had been properly managed.

The respondents in the Justice case, whether right or wrong, had proceeded with the proposal to convert on the theory that it was within the discretion of the governing body of the Assurance Society to distribute the surplus. There was nothing in the bill filed in the Justice case which would have authorized the respondents in that case to deny that the surplus could not be distributed to the member-policyholders of the Assurance Society under the conversion statutes of this state. We do not think it was incumbent upon the respondents in the Justice case to come forward affirmatively and file a cross bill for a declaratory judgment, in the nature of a validation proceeding, to judicially establish every detail of some exclusive method of conversion forever binding the discretion of the Supreme Lodge members and the Superintendent of Insurance and their successors.

■ We do not understand that the doctrine of res judicata or estoppel by judgment requires respondents to open up a suit and expand the issues so as to seek judicial approval of actions with respect to which no breach of law, duty or contract was alleged in the bill of complaint.

In Coleman v. Birmingham Fertilizer Company, 208 Ala. 160, 93 So. 904, we observed that the general rule of res judicata did not apply "as to matters incidentally brought into the controversy." See also Schillinger v. Leary, 201 Ala. 256, 77 So. 846; Terrell v. Nelson, 199 Ala. 436, 74 So. 929; Hall & Farley v. Alabama Terminal & Improvement Co., supra; Crausby v. Crausby, 164 Ala. 471, 51 So. 529; Chamberlain v. Gaillard, 26 Ala. 504. We hold that there is no merit in appellants' first four assignments of error for the reason that the issue in this case was not an issue in the Justice case and that under the peculiar circumstances of the Justice case there was no occasion for the respondents in that case to have litigated the question as to whether or not under the conversion statutes of this state, surplus of a fraternal benefit society had to be distributed to its member-policyholders in order to legally effectuate a conversion to a stock life insurance corporation.

■ We are also of the opinion that the principle of res judicata or estoppel by judgment has no application in that the parties in the Justice case, supra, and those in this case are not the same. In the Justice case certain officers and trustees were made parties. But not so in this case. We do not agree with appellants' assertion that " * * * a suit against the society is against each member, its trustees, its supreme lodge and its officers * * *" We construe the case of Grand Lodge, K. P. et

al. v. Shorter, 219 Ala. 293, 122 So. 36, to hold to the contrary. Section 143, Title 7, Code 1940, relied upon by appellants, has no application. It relates to unincorporated organizations or associations and the respondent Assurance Society was a corporation, although without capital stock.

Appellants' fifth assignment of error reads:

"The trial court's final decree is contrary to the evidence that the action of the Society's officers in converting it to a stock company is a breach of trust imposed upon them as such officers."

Paragraph K of the bill reads:

"The plan of converting Preferred Life Assurance Society to Preferred Life Insurance Company as conceived and carried out by the officers of the Society and of the Company is a plan which will deprive the members of the fraternal benefit society of their ownership of or interest in the surplus of the Society, and is a breach of the duty imposed upon the confidential relationship existing between them and the members or policyholders."

There are no other allegations in the bill which charge "the Society's officers" with any breach of duty.

Paragraph K of the bill does not name the officers who are charged with breach of duty. No officer is made a party to this proceeding. See Grand Lodge, K. P. et al. v. Shorter, supra.

The language of Assignment of Error 5 would indicate that appellants are contending that there was a conflict in the evidence as to the manner in which the Assurance Society was converted into "a stock company." But we are unable to find any such conflict and frankly we have difficulty in relating that part of the argument in appellants' brief which is said to be in support of their fifth assignment of error to that assignment.

In appellants' brief it is said:

"That prior to conversion the assets of the Society belonged to its members and after conversion the assets of the stock company belonged to its stockholders. Conversion of Preferred Life in the manner shown in this case was a breach of trust imposed upon Mr. Longshore and the other officers of the Society, to use its assets only for its members and not to transfer them to another company and to other owners."

That statement is made despite the fact that the evidence shows beyond peradventure that the conversion was effectuated in ever detail in exact accordance with the provisions of §§ 231–244, Title 28, Code 1940. So appellants must be saying that the conversion constituted a breach of duty on the part of the officers of the Assurance Society, although it was accomplished in the manner prescribed by statute and as authorized and directed by the supreme governing body of the Assurance Society and, prior to conversion, the plan to bring about that result was found by the supervising governmental agency to be in the best interests of the member-policyholders and of the public.

■ Subject to constitutional limitations, the Legislature of this state has full authority to regulate the insurance business and once the Legislature has established a constitutional statutory procedure for conversion and that procedure has been complied with, the matter is at an end.

■ Certain it is that appellants' fifth assignment of error does not question the constitutionality of the conversion statutes, and since the evidence is without dispute that the conversion was accomplished in strict accordance with those statutes, and since the bill does not name the officers charged with "breach of duty" and such officers are not made respondents to the bill, we hold that the fifth assignment of error is without merit. See Grand Lodge, K. P. et al. v. Shorter, supra.

In brief of appellants it is said:

"If the conversion statutes of Alabama in fact vest the surplus funds of the fraternal society in the new stock company, they are in that respect unconstitutional because:

"1. They deprive the members of the fraternal society of their property without compensation [sixth assignment of error]; and

"2. They do not require notice of the conversion to be given the members, which is a lack of due process [seventh assignment of error]."

Under § 242, Title 28, Code 1940, after the conversion was completed, the surplus of the Assurance Society became the property of the Insurance Company and neither that section nor any of the other conversion statutes provides for compensating the member-policyholders of the Assurance Society for any interest they may have had in the surplus before conversion.

The position of appellants, as we understand it, is that as member-policyholders they had a divisible and vested interest in the surplus accumulated by the Assurance Society and hence § 242, Title 28, supra, is unconstitutional in so far as it purports to vest the surplus which had been accumulated by the Assurance Society into the Insurance Company without compensating appellants and other similarly situated for their interest in the surplus.

It is our view that appellants and the class they represent did not have a divisible and vested interest in the surplus of the Assurance Society.

The Assurance Society as a whole held assets of the Society in trust for the benefit of the policyholders.—Most Worshipful Grand Lodge, etc. v. Callier, 224 Ala. 364, 140 So. 557.

Articles IV, § 1; VI, § 3; and X of the Constitution of the Assurance Society provided for a representative form of government with ultimate control in the membership, tracking § 169, Title 28, Code 1940.

Sections 179 and 180, Title 28, Code 1940, read:

"179. Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or if a voluntary association, the articles of association, the constitution and by-laws of the society, and the application for membership, and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member and copies of the same certified by the secretary of the society, or corresponding officer, shall be received in evidence of the terms and conditions thereof, and any changes, additions or amendments to said charter or articles of incorporation, or articles of the association, if a voluntary association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiary and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were enforced at the time of the application for membership.

"180. Any society may create, maintain, invest, disburse, and apply an emergency, surplus, or other similar fund in accordance with its laws. Unless otherwise provided in the contract, such fund shall be held, invested and disbursed for the use and benefit of the society, and no member or beneficiary shall have or acquire individual rights therein or become entitled to any apportionment or the surrender of any part thereof, except as provided in section 172 of this title. The fund from which benefits shall be paid and the funds from which the expenses of the society shall be defrayed, shall be derived from periodical

or other payments by the members of the society and accretions of said fund; but no society, domestic or foreign, shall hereafter be incorporated, or admitted to transact business in this state, which does not provide for stated periodical contributions sufficient to provide for meeting the mortuary obligations contracted when valued upon the basis of the national fraternal congress table of mortality as adopted by the national fraternal congress, August 23, 1899, or any higher standard with interest assumption, not more than four percent per annum, nor write or accept members for temporary or permanent disability benefits except upon tables based upon reliable experience, with an interest assumption not higher than four percent per annum."

Section 23 of the By-laws of the Assurance Society provides, in part, as follows:

"\* \* \* If such accounting and valuation shall disclose a surplus after providing for mortality expense and reserves, the Board of Trustees may, at its discretion, cause a distribution of such surplus to the members holding certificates upon which reserves are set up as aforesaid. The amount, method and provisions shall be determined by the Board of Trustees in such manner as to conserve the interest of the Society, and their actions shall be final. *No member or beneficiary shall have or acquire any individuals rights in said surplus or become entitled to any apportionment or the surrender of any part thereof, except upon declaration or grant thereof by the Board of Trustees* in accordance with the provisions of law and the terms of the Constitution and Laws of the Society and the terms of the beneficial certificates." (Emphasis supplied)

There is nothing in this voluminous record to indicate that the policies or certificates held by the appellants or by any of the class which they represent, contained any provision in conflict with or in modification of the provisions last quoted above.

It seems apparent to us that in view of the provisions which we have quoted from § 23 of the By-laws of the Assurance Society, the property interests of the appellants, as policyholders, is that stated in their contracts or certificates, for the protection of which they had an equitable interest in the preservation of the financial security of the Society. This is not an ownership interest, but a fiduciary interest.

As a result of the conversion, the trusteeship of the assets of the Assurance Society, including its surplus, was transferred from the Society to the Insurance Company. Normally a change in trustees must be made by the court in absence of provision for such a change in a trust instrument.—§ 66, Title 58, Code 1940.

However, in this instance the Legislature has provided a statutory procedure for such a change which, as we have heretofore indicated, was followed in every respect. The appellants as policyholders have the same benefits in their contract or certificate and the same funds providing financial security.

Section 243, Title 28, Code 1940, provides for preservation of contract liabilities and duties in the insurance company and § 244, Title 28, provides in part:

"Such reorganized and converted corporation [the insurance company] shall be obligated to carry out and perform all of the obligations of every kind and character owing by the former fraternal benefit society to the holders of its policies or beneficial certificates, and the same way be enforced against it to the same extent as if said policies and beneficial certificates had been issued by it after such conversion. \* \* \*"

In view of those provisions, it is our opinion that the surplus and reserve funds of the Assurance Society are still impressed with the trust for the protection of the appellants and other policyholders, and that the Insurance Com-

pany cannot use the surplus which the Assurance Society had at the time of conversion for the purpose of paying dividends to its stockholders so long as policies or certificates of persons who were members of the Assurance Society at the time of conversion are in force.

The only changes involved as to the appellant policyholders are that they are no longer liable for assessments and they no longer have the "possibility" of a surplus distribution. But neither of these changes involved vested property rights.

Several decisions from other jurisdictions tend to support our holding.—Equitable Life Assurance Society of U. S. v. Brown, 213 U.S. 25, 29 S.Ct. 404, 53 L.Ed. 682; Grobe v. Erie County Mutual Ins. Co., 57 N.Y.S. 290, 39 App.Div. 183; Polk v. Mutual Reserve Fund L. Ass'n, 207 U.S. 310, 28 S.Ct. 65, 52 L.Ed. 222; Royal Highlanders v. Wiseman, 140 Neb. 28, 299 N.W. 459; Pierce Ins. Co. v. Maloney, 124 Cal.App.2d 501, 269 P.2d 57; Troup v. McCart, a case decided by the United States District Court for the Northern District of Georgia, Atlanta Division, on December 22, 1959, which is not to be found in official reports. However, the decrees in that case were introduced in evidence as respondents' Exhibits 30 and 31.

Perhaps the case last referred to above comes nearer supporting the conclusion which we have reached in that the Georgia statutes at the time the decrees in that case were rendered were substantially the same as our conversion statutes.

As to the other cases just cited, we realize that each of them may be distinguished by a variation in the facts or statutes there under consideration.

Our holding that the appellant policyholders, as well as the other policyholders whom they purport to represent, did not have a divisible and vested interest in the surplus of the Assurance Society, leads to the conclusion that there is no merit in appellants' sixth assignment of error.

 It follows, we think, that since the appellants did not have a divisible and vested interest in the surplus of the Assurance Society, they were not denied due process of law "in that they received no notice of the conversion and were given no opportunity to object to the conversion."

We hold, therefore, that appellants' seventh assignment of error is without merit.

However, we point out that the notices required by the conversion statutes of this state were given by the Assurance Society.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.