PARKER, Justice.
This is an appeal from the order of the Etowah Circuit Court dismissing a putative class action against payday lender Cash Express, Inc., and others for lack of standing of the plaintiffs. We affirm.

Background

On February 12, 2002, Eric A. Martin and Neva Martin filed a class-action complaint against Cash Express, Inc., and 35 Cash Express limited liability companies located in Alabama (hereinafter referred to collectively as “Cash Express”), and fictitiously named defendants, asserting in counts 1 through 6 conspiracy, usurious rates, unjust enrichment, unconscionability, the tort of outrage, and money had and received. On August 2, 2002, the Martins filed a motion in the trial court to stay the action pending the resolution of a case then pending before this Court in which the issue to be decided was whether payday loans were subject to the Alabama Small Loan Act, § 5-18-1 et seq., Ala. Code 1975, or other provisions of Title 5 of Ala.Code 1975. See Austin v. Alabama Check Cashers Ass’n, 936 So.2d 1014 (Ala.2005). On November 22, 2005, after this Court released its decision in Austin, the Martins’ counsel, by letter, requested that the case be removed from the trial court’s *239 administrative docket, and a hearing date was set. During the three-year hiatus, the case had been transferred from Judge Stewart, who had retired, to Judge Malone.
On June 29, 2006, Cash Express filed a motion for a summary judgment arguing that the Martins were judicially estopped from pursuing their action because they had failed to declare the action as a contingent asset in their Chapter 13 bankruptcy proceeding. According to the summary-judgment motion, the Martins had petitioned for bankruptcy on July 3, 2000, and had been discharged in bankruptcy on April 6, 2006. Because the action against Cash Express was filed on February 12, 2002, Cash Express argues, the Martins were required by law to amend their bankruptcy filing to inform the bankruptcy court of the pending action, but had not. In support of its motion for a summary judgment, Cash Express provided the trial court with a copy of the Martins’ entire bankruptcy file on August 11, 2006. On December 19, 2006, the trial court denied Cash Express’s motion without a written order. On January 25, 2007, Cash Express moved the trial court to reconsider its order denying Cash Express’s summary-judgment motion, and Judge Kimberley, who had by then replaced Judge Malone as the trial judge, denied the motion without an order on January 29, 2007.
While Cash Express’s summary-judgment motion was pending, the Martins, on August 17, 2006, filed an amended complaint without obtaining permission to do so from the trial court as required by Rule 15, Ala. R. Civ. P. The amended complaint added five new class plaintiffs, Tyrone Knight, Kevin Lyons, Clarence Peoples, Janice Richard,[1] and Claude Russaw. Peoples later declined consideration as a class representative, and Russaw dismissed his claim against Cash Express; Judge Malone denied Cash Express’s motion to strike the amended complaint on December 19, 2006.
On April 19, 2007, Gregory Cusimano, an attorney who had been a law partner of Judge Kimberley’s until Judge Kimberley took office following the November 2006 election, filed his notice of appearance on behalf of Cash Express. On April 24, 2007, Judge Kimberley recused himself, although the Martins did not file a motion seeking his recusal and had not challenged Cusimano’s appearance with a motion to disqualify him as counsel for Cash Express. The case was then assigned to Judge Millican.
On June 25, 2007, Cash Express filed a motion for a partial summary judgment; the trial court set the motion for a hearing on August 27, 2007. Oh July 9, 2007, the plaintiffs filed a motion for class certification. Cash Express filed for ah extension of time to respond to the motion for class certification because depositions of the class representatives had not been completed. After initially denying the motion, the trial court, on reconsideration, canceled the scheduled hearing and scheduled instead a status conference for August 27, 2007. The trial court ordered all counsel to attend and to brief the court on the background of the case, the issues, and the positions of the parties.
Addressing the claims of each individual plaintiff, Cash Express on November 14, 2007, filed a motion to dismiss or, alternatively, for a summary judgment. As to the claims of Neva Martin, Cash Express quoted from the amended complaint filed *240 August 17, 2006, which defined the putative class as:
“85. Plaintiffs aver that this action is maintainable as a class action, and therefor[e] bring this action and the foregoing counts, as a class action on behalf of a class of borrowers who obtained loans or extensions of credit or credit transactions in the forms herein-above described from defendants in the six years next preceding the filing of the original Complaint to the later of 1). effective date of the Alabama Deferred Presentment Services Act; or 2). the date Cash Express became duly licensed under the Alabama Deferred Presentment Services Act (the ‘Class Period’). The issues of law and fact (concerning these types of financial transactions) to be determined in this Action are common to all the class members. Plaintiffs are members of the Class. Excluded from the Class are ... (c) any person or entity who was or is an officer, director, employee, or a shareholder.... ”
(Emphasis added.) Cash Express produced Neva Martin’s deposition in which, Cash Express argues, she admitted that she had been an employee of Cash Express at the time she borrowed money from Cash Express. Cash Express argued that Neva Martin was not qualified to participate as a class member because the member qualifications are defined by the amended complaint.
As to Eric Martin, Cash Express argued:
“Eric Martin was Neva Martin’s spouse. According to Mrs. Martin, Eric Martin never filled out any application for any of the loans with Cash Express that were in his name. Neva Martin did that. Dep. Neva Martin, p. 57. The Martins had a joint checking account. Dep. Neva Martin, p. 84.
“Eric Martin testified that he was not aware that his name was being signed to accounts at Cash Express. Dep. Eric Martin, pp. 11-12. He testified that he ‘would say that [he] didn’t borrow the money.’ Dep. Eric Martin, p. 14. He also testified that he had never ‘gone in there and done business.’ Id. p. 23. Mr. Martin did not feel that Cash Express owed him any money. Id., p. 21. While he did testify that he thought that one signature on one check was his, Id. p. 16, his wife testified that Eric Martin never made one loan at Cash Express, and that the loan that was made in his name was made by her and for her. Dep. Neva Martin, p. 55. Eric Martin thought of the transactions that were made as being ‘for both of us.’ Dep. Eric Martin, p. 14.
“It is axiomatic that a class representative must be a member of the class he or she purports to represent. Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1137 (Ala.1998). Because Eric Martin never did business with Cash Express by his own admission or at most was merely a conduit through which his wife, Neva Martin, an ex-employee of Cash Express, took out Cash Express loans, he is not a class member and must be dismissed from the action also.”
Cash Express also argued that the Martins are judicially estopped from bringing claims against Cash Express because, as discussed above, they did not list the action against Cash Express as a contingent asset in their bankruptcy proceeding.
As to Knight and Lyons, Cash Express argued that each should be dismissed from the action because each had allowed Cash Express to take a default judgment against him for the debts at issue. Cash Express argued:
*241 “A default judgment is determinative of the issues presented in the complaint on which it is based, both in the action in which it is taken and in all subsequent actions. State Farm Mut. Automobile Ins. Co., Inc. v. Day, 414 So.2d 105, 106 (Ala.Civ.App.1982). ‘When a judgment by default is entered, it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits.’ Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2684 p. 29. The default judgment represents an admission of the facts of the complaint by the defendant. Jones v. McGaha, 470 So.2d 1272, 1273 (Ala.Civ.App.1985). Because of such an admission, there can be no finding in favor of the party against whom the judgment has been taken for something he has already admitted. Gibson v. Elba Exchange Bank, 96 So.2d 756, [266 Ala. 426,] 429 (Ala.1957). See also, Ex parte State ex reí. J.Z., 668 So.2d 566 (Ala.1995)(Alabama Supreme Court refused to relitigate the issue of paternity that was determined by default judgment 12 years earlier.) ‘Valid default judgments establish claim and defense preclusion in the same way as litigated judgments, and are equally entitled to enforcement in other jurisdictions.’ Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 4442, p. 236.
“By allowing the default judgment to be taken against him, Mr. Knight [and Lyons each] admitted that the debt was valid and due to be repaid by him. A finding in his favor in the instant case would be contrary to that earlier admission. Accordingly], because the validity of Mr. Knight’s [and Lyons’s] debt to Cash Express has already been established by the default judgment against him, Mr. Knight [and Lyons are] now barred from contending that his debt to Cash Express was in any way illegitimate.”
As to Richard, Cash Express argued that she should dismissed from the action because she had consented to Cash Express’s judgment against her for the debt at issue and so had admitted that the debt was valid. Cash Express argued:
“Ms. Richard was sued by Cash Express for the money from her loans that she had failed to pay in November of 2000.... She was served in person on November 9, 2000, and agreed to a consent judgment on November 27, 2000.... Ms. Richard answered the complaint -with a plea of not contesting the debt- Dep. Richard, pp. 30-31. She did not hire a lawyer to represent her in the lawsuit. Dep. Richard, pp. 24-25. After she agreed to the consent judgment, Ms. Richard retained an attorney to represent her in bankruptcy and she informed the bankruptcy attorney about the Cash Express debt. Dep. Richard, pp. 35-36. Ms. Richard never sought to have the consent judgment set aside. Dep. Richard, p. 38.
“With respect to a consent decree, ‘even on direct attack in the absence of fraud in its procurement, the parties being sui juris and not standing in confidential relations to each other, a judgment or decree by consent is as conclusive between them and their privies as if the suit had been an adversary one and rendered after a trial on the facts.’ A.B.C. Truck Lines v. Kenemer, 25 So.2d 511, 515-516 (Ala.1946). See also, Edmondson v. Dressman, 469 So.2d 571 (Ala.1985) (Widow of deceased railroad worker was precluded from relitigating FELA claims against deceased’s employer where a consent judgment was entered, even without counsel.); Sand *242 ers v. First Bank of Grove Hill, 564 So.2d 869, 872 (Ala.1990) (‘[A] consent judgment is generally entitled to the same conclusive effect as a judgment on the merits.’)
“Because Ms. Richard consented to the judgment against her and has never sought to have the judgment set aside, the issue of the validity of her debt to Cash Express has already been resolved and she is now barred from relitigating the issue.”
The plaintiffs responded by filing an amended complaint on December 12, 2007, that changed the definition of the class to include employees of Cash Express. They also argued that Neva Martin was never an employee of Cash Express; that, because Eric Martin and Neva Martin had a joint checking account, the loans from Cash Express were to both of them[2] and Eric is therefore a valid plaintiff in the class; that two motions for a summary judgment that presented the judicial-es-toppel argument had been denied and the denial had become the law of the case; and that, because the legality of the loans was not an issue in and was not, therefore, litigated in the actions in which default judgments had been entered against Knight, Lyons, and Richard, their claims are not barred by the doctrine of res judi-cata. They argued that,
“ ‘[although a consent judgment is generally entitled to the same conclusive effect as a judgment on the merits, see 50 C.J.S. Judgments § 705 (1917), all of the elements of res judicata must be present before that doctrine will act as a bar.’ Sanders v. First Bank of Grove Hill, 564 So.2d 869 (Ala.1990).
[[Image here]]
“ ‘Under Alabama law, “the essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (8) with substantial identity of parties, and (4) with the same cause of action presented in both suits.” ’ Wesch v. Folsom, 6 F.Sd 1465, 1471 (11th Cir.1993); Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala.1998).
“Fatal to [Cash Express’s] contention is the fact that, in Alabama, when, as here, a defendant in an action does not file a counterclaim, the only issues resolved for the purposes of res judicata are those that are necessary to the pending suit.”
Cash Express responded in a reply brief filed on December 14, 2007, in support of its motion, arguing that the law-of-the-case doctrine does not preclude a court from reconsidering its denial of a motion for a summary judgment:
“As the Alabama Supreme Court has explained:
“ ‘We recognize that, in some jurisdictions, denial of a motion for summary judgment becomes the law of the case, and bars rehearing of a subsequent motion for summary judgment unless new grounds are asserted or new proof offered.... We are of the opinion, however, that Illinois provides the better rule; a court may reconsider its ruling on a motion for summary judgment and may correct an emneous ruling at any time before final judgment .... The number of times a subsequent motion for summary judgment will be allowed rests within the *243 sound discretion of the judge before whom the case is to be tried.’
“Food Serv. Distribs., Inc. v. Barber, 429 So.2d 1025, 1027 (Ala.1983). (Emphasis added [in Cash Express’s brief].)”
Also in its reply brief, Cash Express disputed the plaintiffs’ claim that the legality of the loans had not been litigated, saying:
“The Plaintiffs also contend that the judgments do not bar their participation in this action because the legality of the payday loans were not at issue in the collection suits. This argument also fails.
“As was noted in the original summary judgment brief, a default judgment represents an admission of the facts of the complaint by the defendant. Jones v. McGaha, 470 So.2d 1272, 1278 (Ala.Civ.App.1985). Because of such an admission, there can be no finding in favor of the party against whom the judgment has been taken for something he has already admitted. Gibson v. Elba Exchange Bank, 96 So.2d 756, [266 Ala. 426,] 429 (Ala.1957). See also, Ex parte State ex rel J.Z., 668 So.2d 566 (Ala.1995) (Alabama Supreme Court refused to relitigate the issue of paternity that was determined by default judgment 12 years earlier.)
“In order for the Plaintiffs to prevail in this action, the Court must find that the loans to the Plaintiffs were not valid loans and the Plaintiffs do not owe the Cash Express defendants any money; however, by acceding to either default or consent judgments, the same Plaintiffs have admitted that the loans were valid and that they did owe money to Cash Express. Accordingly, Janice Richard[ ], Tyrone Knight and Kevin Lyons cannot recover in this action.”
Also, on December 14, 2007, Cash Express filed a motion to strike the plaintiffs’ amendment to the class definition under Rule 15(a), Ala. R. Civ. P., arguing that the plaintiffs’ amendment redefines the class a mere five days before the scheduled hearing on Cash Express’s motion for a summary judgment. Cash Express argued that because the first setting of the trial had been on September 22, 2008, and because the plaintiffs had not obtained the permission of the court to amend the complaint, the motion to change the definition of the class should be stricken.
On December 21, 2007, the trial court granted Cash Express’s November 14, 2007, motion to dismiss. The salient holdings of the trial court’s order were as follows:
• As an employee of Cash Express, Neva Martin was specifically excluded from being a class member.
• Eric Martin had had no individual transactions with Cash Express; any such purported transactions were made jointly with Neva Martin, and because Neva Martin was excluded from the class, Eric cannot maintain an independent claim.
• The Martins were judicially estopped from asserting their claims because they failed to include the claims in their bankruptcy proceeding.
• The default judgments in the earlier actions against Knight and Lyons bar any recovery by Knight and Lyons in the current action.
• Richard is bound by the terms of her consent judgment and cannot claim that the debt she had agreed was valid is now invalid.
• Because none of the named plaintiffs is capable of sustaining a claim, they are dismissed from the action.
• Because there are no named plaintiffs, the action is dismissed in its entirety.
The plaintiffs argue on appeal that the trial court erred in holding that Neva Mar *244 tin could not be a member of the class; that the trial court erred in holding that Eric Martin could not bring a claim against Cash Express; that the trial court erred in holding that the law-of-the-case doctrine did not apply and that judicial estoppel barred the Martins’ claims; that the judgments against Lyons, Knight, and Richard in earlier actions do not bar their claims in the present action; that the trial court erred in failing to grant the plaintiffs’ motion for a summary judgment as to liability; and that the forced recusal of Judge Kimberley by Cash Express was improper “judge-shopping” that should be condemned.
Because Cash Express included deposition evidence in its November 14, 2007, motion to dismiss or, alternatively, for a summary judgment, we will use the standard of review for a summary judgment, even though the trial court framed its disposition of the case as a dismissal.

Standard of Review

“In reviewing a summary judgment, an appellate court looks at the same factors that the trial court considered in ruling on the motion.... [0]n appeal a summary judgment carries no presumption of correctness.” Hornsby v. Sessions, 703 So.2d 932, 938 (Ala.1997).
“In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Evidence is 'substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Ex parte General Motors Corp., 769 So.2d 903, 906 (Ala.1999) (citations omitted).
“Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.” Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).

Analysis

Judicial Estoppel

The plaintiffs first argue that the trial court erred in finding that Neva Martin could not be a class member because she was an employee of Cash Express and that, because Eric’s claims were, at best, based on joint transactions with Neva, Eric Martin could not maintain an independent claim against Cash Express. The plaintiffs argue that Neva was not an employee of Cash Express, and they point to testimony that, they say, Cash Express took out of context while disregarding testimony that shows that Neva was never an employee of Cash Express but had worked for a manager of a Cash Express location who had paid her out of her personal funds, not using Cash Express money. We need not decide that issue, however, because, for the reasons presented below, we agree with the trial court that both Neva and Eric were judicially estopped as a result of their bankruptcy proceeding from pursuing the claims against Cash Express.
The Court of Civil Appeals recently summarized the current status of the doctrine of judicial estoppel in Alabama:
“In 2003, our Supreme Court followed the United States Supreme Court’s deci *245 sion in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), regarding the applicability of the doctrine of judicial estoppel. See Ex parte First Alabama Bank, 883 So.2d 1236, 1246 (Ala.2003) (overruling Porter v. Jolly, 564 So.2d 434 (Ala.1990), and cases consistent with Porter regarding the requirements to show judicial estop-pel). In Ex parte First Alabama Bank, the Aabama Supreme Court held that for judicial estoppel to apply:
“ ‘(1) “a party’s later position must be ‘clearly inconsistent’ with its earlier position”; (2) the party must have been successful in the prior proceeding so that “judicial acceptance of an inconsistent position in a later proceeding would create ‘the perception that either the first or second court was misled’ and (3) the party seeking to assert an inconsistent position must “derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.” ’
“Id. at 1244 (citations omitted).”
Lewis v. First Tuskegee Bank, 964 So.2d 36,40-41 (Ala.Civ.App.2007).
In its June 29, 2006, motion, Cash Express argued that the doctrine of judicial estoppel bars the Martins’ action:
“Because the Martins have been discharged from their bankruptcy without ever amending their bankruptcy filings to include their potential cause of action against Cash Express, they are judicially estopped from bring this action.
“ ‘The doctrine of judicial estoppel applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system, while equitable es-toppel focuses on the relationship between the parties to the prior litigation.’
“Ex parte First Alabama Bank, 883 So.2d 1236 (Ala.2003).
“In the First Alabama Bank case, the Aabama Supreme Court adopted the United States Supreme Court formulation for proving judicial estoppel as follows:
“ “We today embrace the factors set forth in New Hampshire v. Mainel, 532 U.S. 742 (2001),] and join the mainstream of jurisprudence in dealing with the doctrine of judicial estop-pel.’
“Ex parte First Alabama Bank, 883 So.2d at 1246.
“In so doing, the Aabama Supreme Court explained that the following elements were required to show judicial estoppel:
“ ‘The [United States Supreme] Court held that for judicial estoppel to apply (1) a party’s later position must be “clearly inconsistent” with its earlier position; (2) the party must have been successful in the prior proceeding so that “judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled ...” and (3) the party seeking to assert an inconsistent position must “derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.” ’
“Ex parte First Alabama Bank, 883 So.2d 1236, 1244-1245 (Ala.2003).
“In essence, the First Alabama Bank decision abolished the requirements of showing privity or reliance by the party seeking to show judicial estoppel. Id., at 1242.
“In the case of Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So.2d 917, 918-19 (Ala.1993), the Aa- *246 bama Supreme Court observed the following:
“ ‘In applying the doctrine of judicial estoppel, this Court considers the relationship between the litigant and the judicial system. The doctrine applies to preclude a party from assuming a position in a legal proceeding inconsistent with a position previously asserted.... Further, it has been specifically held that a debtor in bankruptcy must disclose any litigation likely to arise in a nonbankruptcy context.... The doctrine of judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy contest, to estop the debtor from presenting the claim.’
“(Emphasis added [by Cash Express].)
(Citations omitted.)
“The Alabama Supreme Court then held that summary judgment was due to be granted against a debtor who had not listed his claim against a bank as part of his assets, even though the lawsuit based on that claim was filed 17 months after his discharge from bankruptcy, because the facts on which the lawsuit were based were known to the debtor during his bankruptcy-
“ ‘Luna further contends that the doctrine of judicial estoppel should not be applied to him because, he says, he was unaware of his claims against Dominion until after his bankruptcy discharge. This argument is also without merit. Certainly, if the facts of his loan with Dominion were as he says they were, then Luna, acting as a reasonable person, would have known, when he filed his bankruptcy proceeding that he had a claim against Dominion.’
“Luna, 681 [So.2d] at 919.
“See also, Bertrand v. Handley, 646 So.2d 16 (Ala.1994) (tenant’s failure to disclose her default judgment against landlord as an asset in bankruptcy es-topped her from asserting her claim against the landlord once she was discharged from bankruptcy.).
“Although both Luna and Bertrand involved Chapter 7 bankruptcies, the same rule applies to Chapter 13 bankruptcies. As the Eleventh Circuit explained in the case of De Leon v. Comcar Ind., Inc., 321 F.3d 1289, 1291 (11th Cir.2003):
“ ‘De Leon attempts to distinguish [between] a debtor who file[s] for bankruptcy under Chapter 7, which allows for the complete discharge of debts and ... bankruptcy under Chapter 13 through which ... debts [are] discounted and repaid. However, a financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid.... We also conclude that any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies. Accordingly, we hold that the rule established in Burnes [v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002) ], that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court, applies equally in Chapter 13 bankruptcy cases.’
“The De Leon court also points out the futility of an attempt for the debtor to reopen his bankruptcy case to amend his schedule of assets once an opposing par *247 ty has filed a motion to dismiss the lawsuit.
“ ‘While Chapter 13 does allow amendments to be made to add after-acquired assets and Chapter 7 does not, De Leon did not make such an amendment even after he filed suit. Despite [De LeonJ’s continuing duty to disclose all assets or potential assets to the bankruptcy court, he did not amend his bankruptcy documents to add a potential employment discrimination claim until after Comear relied on it in its motion to dismiss the case.
“‘The success of our bankruptcy laws requires a debtor’s full, honest disclosure. Allowing [the plaintiff] to back-up, re-open the bankruptcy case and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.’
“[De Leon ], 321 F.3d at 1291-1292.
“See, Crider v. Misty Acres, Inc., 893 So.2d 1165, 1171 (Ala.Civ.App.) 2004 (‘Courts in Alabama have held that a plaintiff is judicially estopped from bringing a cause of action in state court that was not timely listed in his bankruptcy proceedings as at least a contingent asset.’)
“Accordingly, the claims by the Martins are due to be dismissed.”
The Martins argue that they did not know that they had a claim against Cash Express when they filed their petition in bankruptcy and, citing Ex parte Moore, 793 So.2d 762 (Ala.2000), further argue that they had no obligation to amend their bankruptcy schedules to show the claim because they had filed for bankruptcy under Chapter 13 and would pay the remaining debts from earnings and not from assets. In Ex parte Moore, this Court, quoting Jinright v. Paulk, 758 So.2d 553, 559 (Ala.2000),[3] held that a debtor’s failure to disclose his action against a mobile-home retailer during his Chapter 13 proceeding did not judicially estop his claims against the retailer. Quoting again from Jinright, this Court stated:
“ ‘[NJothing before us indicates that the Jinrights will benefit from that omission, nor has there been any showing that Paulk and Option Builders have been prejudiced by the omission.’ 758 So.2d at 560. Likewise, nothing now before us indicates that Moore will benefit from his omission or that Southern Housing, as a noncreditor, was prejudiced by that omission.”
793 So.2d at 766. However, we note that this Court’s decision in Ex parte Moore predated Ex parte First Alabama Bank, 883 So.2d 1236 (Ala.2003), in which this Court adopted a new standard for judicial estoppel as discussed above. We also find the reasoning in De Leon v. Comear Indus., Inc., 321 F.3d 1289 (11th Cir.2003) persuasive; particularly persuasive is its statement that “a financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid.” 321 F.3d at 1291 (emphasis added). Under the Chapter 13 bankruptcy plan approved for the Martins, a furniture store, for example, was to receive $534 of a $1,068.83 secured debt and $373.80 of another secured debt in the amount of $800, payable at $8.90 and $6.23 per month, respectively, as the result of *248 discounting based on assets and earnings available for repayment. The approved plan also provided that unsecured creditors would be paid approximately 40% of the amount owed to them. The record before us does not indicate whether Cash Express was a creditor that would recover under the Martins’ Chapter 13 bankruptcy plan and, if so, what its portion would be.
Like the appellant in Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So.2d 917 (Ala.1993), the Martins argue that they did not know that they had an action against Cash Express when they filed their petition in bankruptcy. The Martins, however, had a continuing duty to disclose all potential assets to the bankruptcy court. De Leon, 321 F.3d at 1292. The record indicates that the majority of the loans that are the subject of this action were made in 1999 and in the spring of 2000. The Martins filed their bankruptcy petition on July 3, 2000, and the bankruptcy plan was approved on January 17, 2001. The Martins filed their complaint against Cash Express on February 12, 2002, and they were discharged in bankruptcy more than four years later on April 6, 2006, never having included their claim against Cash Express in the bankruptcy estate.
The Martins argue that, because the action was filed after the bankruptcy plan was confirmed, they could pursue the claim without including it in their bankruptcy estate. However, because the cause of action arose at the time the loans were made, it should have been included as a potential asset in the bankruptcy petition. “A cause of action accrues at the time the complained-of action first gives rise to injury, even if the full extent of the injury is not apparent at the time.” Van Hoof v. Van Hoof, 997 So.2d 278, 296(Ala.2007). The Martins argue that the action against Cash Express was filed after the confirmation of their Chapter 13 bankruptcy plan and that Muse v. Accord Human Resources, Inc., 129 Fed.Appx. 487 (11th Cir.2005) (not published in F.2d), a case very similar to this one, was decided contra to De Leon, holding that the claim in Muse arose after the confirmation of the plan and was not, therefore, a part of the bankruptcy estate. The bankruptcy court in In re Harvey, 356 B.R. 557 (Bankr.S.D.Ga.2006), found first that, as an unpublished opinion, Muse was not binding and next that the case on which Muse relied, Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir.2000), was rendered unpersuasive.
“While Telfair was applied to post-confirmation causes of action in Muse, [In re ] Carter[, 258 B.R. 526 (Bankr.S.D.Ga.2001),] and [In re ] Ross, [278 B.R. 269 (Bankr.M.D.Ga.2001),] none of these cases are persuasive in light of Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir.2002), which held that a debtor’s failure to amend his bankruptcy schedules to reveal a discrimination lawsuit instituted two years after he filed his bankruptcy case triggered judicial estoppel. The Court held that the debtor had a continuing duty to amend his schedules, both after confirmation of his Chapter 13 plan when he filed his lawsuit, and later when his case was converted to Chapter 7. Id. at 1287, 1289. ‘[The debtor] filed and pursued his employment discrimination claims during the pendency of his Chapter 13 case, but never amended his financial statements to include the lawsuit.’ Id. at 1287-88. Further, after converting to Chapter 7, ‘he once again failed to disclose the pending lawsuit to the bankruptcy court.’ Id. at 1288. These conclusions clearly reveal that extending Telfair’s vesting rule to post-confirmation assets is tenuous at best.
“While Bumes does not articulate the impact of its ruling on Telfair, it could *249 only have concluded that the debtor’s schedules must be amended if it believed that post-confirmation causes of action remain estate property. Otherwise, the failure to amend to reveal those assets could hardly set the stage for a judicial estoppel attack. See also Ajaka v. BrooksAmerica Mortgage Corp., 453 F.3d 1339, 1345 (11th Cir.2006) (reaffirming Bumes’s continuing duty to amend standard in the context of the post-confirmation discovery of a pre-petition cause of action).”
356 B.R. at 562. Thus, whether their cause of action against Cash Express is said to have accrued before or after the confirmation of the bankruptcy plan, the Martins were required to amend their bankruptcy plan to include the claim as an asset of the bankruptcy estate.
Because the Martins’ petition in bankruptcy did not include the potential claim against Cash Express, and because they failed to include the claim in the bankruptcy plan once the complaint against Cash Express was filed, the position taken in the bankruptcy court was clearly inconsistent with the position taken in the complaint. The Martins were successful in having the plan confirmed and their debts discharged despite the inconsistency, and the Martins derived an unfair advantage over their creditors by not revealing the existence of the potential recovery from Cash Express. For these reasons, we affirm the judgment of the trial court to the extent that it holds that the Martins were estopped from pursuing a claim they failed to include as a potential asset of their bankruptcy estate.

Law of the Case

The Martins argue that Judge Millican erred in finding that they were estopped from pursuing their claims because two earlier judicial-estoppel-based motions for a summary judgment were denied by two different judges in this case, and the denial of the motions had become the law of the case. They argue that, “despite [the fact] that neither the relevant facts nor the applicable law had changed, Judge Millican ignored the earlier rulings ... and held that the Martins were judicially estopped.” Martins’ brief, at 48-49(emphasis in original). They argue that Judge Millican exceeded his discretion in allowing Cash Express to litigate the issue for a third time.
This Court recently addressed the law-of-the-case doctrine in Belcher v. Queen, 39 So.3d 1023 (Ala.2009):
“The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. Ex parte Discount Foods, Inc., 789 So.2d 842, 846 n. 4 (Ala.2001). The law-of-the-case doctrine may be disregarded if the court is convinced its prior decision was clearly erroneous or there has been an intervening change in the law....”
39 So.3d at 1038. The trial court ruled against the Martins after they made their argument that the law-of-the-case doctrine applied. Belcher v. Queen clearly permits the trial court to disregard the doctrine if it is convinced that the earlier decisions were clearly erroneous. Because “we will affirm a summary judgment if there is any ground upon which the judgment could have been based, McCloud v. City of Irondale, 622 So.2d 1272, 1[2]73 (Ala.1993),” Wadsworth v. Jewell, 902 So.2d 664, 668 (Ala.2004), the judgment of the trial court holding that the Martins’ claims are barred under the doctrine of judicial estop-pel is affirmed.

*250
Claim or Defense Preclusion

Although Cash Express did not use the term “claim preclusion” in its argument to this Court, claim preclusion is inherent in that portion of the judgment of the trial court holding that Knight and Lyons had admitted that their debts were valid by virtue of accepting a default judgment, which default judgment is “determinative of the issues presented in the complaint on which it is based, both in- the action in which it is taken and in all subsequent actions. State Farm Mut. Auto. Ins. Co. v. Day, 414 So.2d 105, 106 (Ala.Civ.App.1982).” The trial court similarly held that Richard’s consent judgment-constituted her agreement that her debt was valid and that she may not now claim that the debt is invalid.
“The traditional res judicata case (frequently referred to as a claim preclusion) involves prior litigation between a plaintiff and a defendant, which is decided on the merits by a court of competent jurisdiction, and then a subsequent attempt by the prior plaintiff to relitigate the same cause of action against the same defendant, or perhaps to relitigate a different claim not previously litigated but which arises out of the same evidence. Alabama law is well settled that this will not be allowed. A valid, final judgment on the merits of the claim extinguishes the claim. If the plaintiff won, the claim is merged into the judgment; if the defendant won, the plaintiff is barred from relitigating any matter which could have been litigated in the prior action. Lesley v. City of Montgomery, [485 So.2d 1088 (Ala.1986) ]; Ozley v. Guthrie, [372 So.2d 860 (Ala.1979) ]; Wheeler v. First Alabama Bank of Birmingham, [364 So.2d 1190 (Ala.1978) ]; McGruder v. B & L Construction, Inc., [331 So.2d 257 (Ala.1976) ]. Likewise, under res judicata we have consistently rejected an attempt by a former defendant to relitigate issues that were, or could have been, raised in prior litigation that ended in a valid adjudication by a court of competent jurisdiction. Educators’ Investment Corp. of Alabama, Inc. v. Autrey, [383 So.2d 536 (Ala.1980) ]; A.B.C. Truck Lines, Inc. v. Kenemer, [247 Ala. 543, 25 So.2d 511 (1946) ].”
Whisman v. Alabama Power Co., 512 So.2d 78, 81 (Ala.1987).
In the trial court, Cash Express made its prima facie case for a dismissal or a summary judgment by producing evidence indicating that the Martins could not be class representatives and that Knight, Lyons, and Richard did not qualify as class members because they had accepted default or consent judgments in earlier actions involving Cash Express. Cash Express had presented testimony and documentary evidence regarding the existence of those judgments. At that point, the burden shifted to the plaintiffs to create a material issue of fact to preclude a summary judgment.
In their response to Cash Express’s motion for a summary judgment, the plaintiffs argued that the actions that resulted in the judgments against Knight, Lyons, and Richard did not litigate the legality of the payday loans. Citing Byrd v. Fowler, 50 Ala.App. 596, 281 So.2d 647, 651 (Ala.Civ.App.1973), which quoted 50 C.J.S. Judgments § 687, they argued that “unless a defendant asserts a counter-claim or set off, res judicata applies only as ‘to any matter actually at issue and determined in the former action....’” Cash Express’s motion cited State Farm Mutual Insurance Co. v. Day, 414 So.2d 105, 106 (Ala.Civ.App.1982),, for the principle that “[a] default judgment is determinative of the issues presented in the complaint on which it is based, both in the action in which it is *251 taken and in all subsequent actions.” Cash Express also quoted 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2684 (3d ed.1998), for the proposition that “when a judgment by default is entered, it generally is treated as conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits.” (Emphasis added.)
The language quoted by Cash Express from Wright’s treatise addresses the issue-preclusion effect of a default judgment entered pursuant to Rule 55, Ala. R. Civ. P. The next sentence in the treatise refers to the claim or defense preclusion aspect of res judicata with which we are faced here: “The claim-preclusion and issue-preclusion ramifications of a default judgment are discussed in detail elsewhere in this Treatise.” A footnote references § 4442, which was cited by the trial court in its order.
“ ‘Valid default judgments establish claim and defense preclusion in the same way as litigated judgments, and are equally entitled to enforcement in other jurisdictions.’ Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 4442, p. 236.
“Accordingly, Mr. Knight and Mr. Lyons are bound by the terms of their default judgments and cannot now claim that the debt that they admitted was valid and due to be paid is now invalid.”
Wright’s treatise distinguishes the effect of a default judgment as to issue preclusion versus claim or defense preclusion:
“Judgment by default commands the full effects of claim and defense preclusion. Judgment by default in the technical sense that the issues have not been litigated does not warrant issue preclusion for the very reason that the issues have not been litigated or decided.” 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4442 (2d ed.2002).
Under Alabama caselaw, we look not only to those claims or defenses that were raised, but also to those that could have been raised. A.B.C. Truck Lines, Inc. v. Kenemer, 247 Ala. 543, 547, 25 So.2d 511, 514 (1946) (“There is a good exposition of the doctrine in 2nd Black on Judgments, where it is first noted that ‘it is a general rule that a valid judgment for the plaintiff definitely and finally negatives every defense that might and should have been raised against the action; and this is true, not only with respect to further or supplementary proceedings in the same cause, but for the purposes of every subsequent suit between the same parties, whether founded upon the same or a different cause of action. “A party cannot relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties or their privies in reference to the same subject-matter ....”’ 2nd Black on Judgments, § 754.”); Ashurst v. Preferred Life Assurance Soc’y of Montgomery, 282 Ala. 119, 129-30, 209 So.2d 403, 411-12 (1968) (“We have a number of cases which, in effect, hold that the doctrine of res judicata is far broader than the determination of the question directly involved in the prior action, and the prior judgment extends to all questions falling within the scope of the original action, and which could have been presented by exercising due diligence, and extends to both the claim and the defense.”); and Owen v. Miller, 414 So.2d 889, 890 (Ala.1981) (“Furthermore, if plaintiff wins, defendant is barred from raising any defense that could have been litigated in the former action, regardless of whether it was actually litigated, if the matter constitutes a ground for an action against *252 plaintiff.” (paraphrasing Restatement (Second) of Judgments)).
Knight, Lyons, and Richard could have asserted the defense of illegality of the loan as a defense to the prior actions against them by Cash Express; they are now precluded from using those same available defenses as the basis of a cause of action against the former plaintiff in those actions.
On appeal the plaintiffs argue that claim or defense preclusion should not prevent Knight, Lyons, and Richard from pursuing their claims against Cash Express because they each had multiple loan transactions with Cash Express and the default judgments and consent judgment addressed only one loan transaction of each plaintiff. However, Cash Express shows that this argument was not made in the trial court. “This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). Therefore, the trial court’s judgment as to this issue is due to be affirmed.

Other Issues

The plaintiffs filed a motion for a summary judgment as to Cash Express’s liability based on this Court’s holding in Austin v. Alabama Check Cashers Ass’n, 936 So.2d 1014 (Ala.2005). The trial court “failed to grant” that motion, and the plaintiffs argue that, because this case is identical to Austin, the judgment of the trial court should be reversed. They make no legal argument, however, showing the similarity of the two cases, nor do they explain how persons who are not qualified to bring an action, as is the case with certain of the plaintiffs, would be qualified under Austin. Thus, we decline to consider this claim.
The plaintiffs’ final argument is that Judge Kimberley’s recusal was forced by Cash Express’s improper “judge-shopping.” The plaintiffs contend that Cash Express hired Judge Kimberley’s former law partner specifically to force Judge Kimberley to recuse himself from the case, but they provide only a sequence of events and conjecture to support their claim. They did not challenge the former law partner’s notice of appearance, nor did they raise the issue of purported judge-shopping in the trial court. This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court. Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991).

Conclusion

We agree that the Martins were judicially estopped from bringing their claims against Cash Express, and we affirm the judgment of the trial court as to them. Knight, Lyons, and Richard were precluded from pursuing claims that they could have raised as defenses in the previous actions brought by Cash Express against them that ended in default or consent judgments. Therefore, as to them, the judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, MURDOCK, and SHAW, JJ., concur in the result.

. Janice Richard is sometimes referred to as "Janice Richards " in the record. Because "Janice Richard” is the name used in the complaint, we use that name throughout this opinion.

. When originating a payday loan, the customer writes a check to Cash Express for the amount of the loan plus an additional charge for the use of the money. This uncashed check secures the loan until repayment. If the borrower defaults, the check is then cashed by Cash Express to recover its funds.

. " '[A] debtor’s mere knowledge or awareness of a potential claim and the debtor’s failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application of the doctrine of judicial estop-pel.' ” 793 So.2d at 765.